SUSAN M. CHEHARDY, Judge.
 

 12This is a petitory action in which the trial court ruled in the plaintiffs favor and the defendant appeals. We reverse.
 

 PROCEEDINGS BELOW
 

 The property at issue is a strip of undeveloped land (“the Disputed Property’) in Boutte, St. Charles Parish, described as follows:
 

 A portion of land situated on the right bank of the Mississippi River in the Parish of St. Charles, and being a portion of a tract of land known as the southern portion of the Southeast quarter of Section Eleven (11) T14S; R20E, measuring one hundred and thirty-five feet (135’) front on a road running on the lower line of said tract by a depth extending to the upper line of said quarter section, bounded on the North by the property of the Ellington Planting Company and south by the property of Mrs. William Cadow (Mrs. Eulalie Tinney Ca-dow).
 

 Being the same property acquired by Mistress Mary Tinney, wife of Lucius J. Langley, from Stephen D. Tinney on January 2nd, 1907, and recorded in the office of the clerk of court of St. Charles Parish in COB “N”, folio 556.
 

 Plaintiff, Betty Langley, filed suit in September 2005, seeking to be recognized as owner of the Disputed Property through a chain of title reaching back to
 
 *1156
 
 the sovereign. She alleged that Defendant, Rachel Billiot, had deposited | .-¡various abandoned vehicles and trailers on the property and had made verbal claim of ownership to the Disputed Property.
 

 Defendant denied the validity of Langley’s claim and filed a reconventional demand, alleging she and her ancestors have been in possession of the property since 1974 and that she had obtained a quitclaim deed to the property. Defendant asserted ownership through acquisitive prescription of either ten years or thirty years.
 
 [1]
 

 Prior to trial, the court and the parties agreed the trial would be in three phases: phase 1, to establish whether Defendant had been in possession of the Disputed Property for at least one year prior to filing of suit; phase 2, to establish whether Plaintiff had valid title; phase 3, to establish whether Defendant had possessed the property for long enough to establish acquisitive prescription.
 

 During the first stage of trial, the court heard evidence of how long Defendant had been in possession of the Disputed Property prior to suit. The court found that Defendant had possession of the Disputed Property for at least one year prior to the filing of this suit.
 

 The burden then shifted to Plaintiff to prove she has a valid chain of title extending back to the sovereign. Plaintiff introduced her chain of title, consisting of 32 documents accompanied by testimony to validate and explain some of the documents.
 

 At conclusion of that portion of the trial, Defendant moved for involuntary dismissal, arguing that Plaintiff had failed to present evidence of a complete title. Specifically, Defendant challenged three separate gaps or breaks in the chain of title: (1) from 1874 to 1881; (2) from 1927 to 1930; (3) from 1933 to 1986. The |4court denied the motion, finding that Plaintiff had carried her burden of proof and had shown she has a good chain of title to the Disputed Property.
 

 The trial then moved to its third phase, hearing evidence on Defendant’s claim of acquisitive prescription. At conclusion of phase 3, the court took the case under advisement.
 

 Several weeks later the court issued its ruling. The judgment declared Plaintiff to be the legal owner of the Disputed Property, ordered Defendant to remove all abandoned vehicles and trailers she owns or has caused to be placed on the property, and dismissed Defendant’s reconventional demand.
 

 In written Reasons for Judgment, the court stated,
 

 Plaintiff produced proof that Stephen D. Tinney was a prior owner of all the property comprising the “Mary Tinney” tract and all of the property comprising the adjacent “Eulalie Tinney Cadow” tract. Stephen Tinney subdivided his property and transferred the tracts to his sisters, two of whom were Mary Tinney and Eulalie Tinney. Defendant’s Lots 1 and 2, adjacent to the “Mary Tinney” tract, are a portion of the “Eu-lalie Tinney” tract. Therefore, plaintiff has made out a sufficient case that Stephen D. Tinney was a prior common owner to all owners of property in both the “Mary Tinney” and the “Eulalie Tin-ney Cadow” tract.
 

 
 *1157
 
 The court discussed two gaps in the chain of title—1927-1930, listed as (2) above, and 1933-1986, listed as (3) above— for which the court found adequate evidence to link the owners prior to and following each gap. The court concluded these were not fatal defects. The court did not mention the gap from 1874 to 1881, listed as (1) above.
 

 The court reiterated the rulings made during trial regarding Defendant’s possession and Plaintiffs chain of title. In addition, the court found that Defendant had not possessed the Disputed Property for 30 years and Defendant did not satisfy the requirement of good faith to qualify for ten-year acquisitive prescription.
 

 | ¡^Defendant appeals.
 
 [2]
 
 In her only assignment of error, she asserts the trial court erred in denying her Motion for Involuntary Dismissal. She argues Plaintiff failed to carry her burden of proof under La. C.C.P. art. 3653 and
 
 Pure Oil Co. v. Skinner,
 
 294 So.2d 797 (La.1974), by failing to present evidence of a complete chain of title back to the sovereign.
 

 LAW AND ANALYSIS
 

 “One who claims the ownership of an immovable against another in possession must prove that he has acquired ownership from a previous owner or by acquisitive prescription. If neither party is in possession, he need only prove a better title.” La. C.C. art. 531.
 

 “The petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right therein, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiffs ownership.” La. C.C.P. Art. 3651.
 

 To obtain a judgment recognizing his ownership of immovable property or real right therein, the plaintiff in a petitory action shall:
 

 (1) Prove that he has acquired ownership from a previous owner or by acquisitive prescription, if the court finds that the defendant is in possession thereof; or
 

 (2) Prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof.
 

 When the titles of the parties are traced to a common author, he is presumed to be the previous owner.
 

 La. C.C.P. Art. 3653.
 

 In
 
 Pure Oil Co. v. Skinner,
 
 294 So.2d 797 (La.1974), our supreme court held that a plaintiff not in possession versus a defendant who is in possession is required “to show good title against the world without regard to the title of the party in possession.” 294 So.2d at 799. Title is made out when an unbroken chain of valid titles from the sovereign is shown.
 
 Whitley v. Texaco, Inc.,
 
 434 So.2d 96, 103 (La.App. 5 Cir.1982),
 
 writ denied,
 
 435 So.2d 445 (La.1983).
 

 “The case law is clear that ‘title good against the world’ means one must produce an unbroken chain of record title back or show ownership through acquisitive prescription.”
 
 Cuny v. Quinn,
 
 03-649, p. 5 (La.App. 5 Cir. 10/28/03), 860 So.2d 232, 237.
 

 Defendant asserts the documents introduced by Plaintiff show a seven-year gap that is fatal to Plaintiffs claim. The chain of title shows that in 1874 the Disputed Property was owned by Laura M. Bielman, through the Succession of John M. Biel-man, and in that year it was adjudicated to
 
 *1158
 
 the State of Louisiana for unpaid property taxes. The next document in Plaintiffs chain reflects that Henry S. Lang sold the Disputed Property to Stephen D. Tinney in 1881. Defendant points out that Plaintiff has admitted that “no record of acquisition by Henry S. Lang is found in the State Land Office or in the St. Charles Parish conveyance records.” Similarly, there is no recorded document that shows how title was passed from the State to another party after the 1874 tax adjudication.
 

 Defendant contends this gap between the adjudication to the State in 1874 and the sale by Lang to Tinney in 1881 means Plaintiffs chain of title does not meet the standard of La. C.C.P. art. 3653 and the Louisiana jurisprudence interpreting that article.
 

 Defendant points out that the trial court failed to address the gap in its written Reasons for Judgment. During trial, however, when the court denied | ^Defendant’s Motion for Involuntary Dismissal, the court stated that although Plaintiff was required to show an unbroken chain of title, it did not have to be perfect title, referring to the case of
 
 Cuny v. Quinn,
 
 03-0649 (La.App. 5 Cir. 10/28/03), 860 So.2d 232.
 

 Defendant argues the trial court erred in its interpretation of
 
 Cuny,
 
 and the line of cases on which
 
 Cuny
 
 relied, as equating a gap in title with imperfect title:
 

 [T]he rule that title does not have to be “perfect” to satisfy the requirements of article 3653 allows a court to declare that a chain of title has been proven when there are minor errors and omissions that do not threaten the veracity of the chain. In a chain of title that is “apparently good,” what appears to be a gap in title is not actually a break in the chain, but merely requires further inquiry by the court to fully link two documents together. In an incomplete chain of title, there is a document or more missing from the chain, without which the whole chain breaks down. None of the cases from which
 
 Cuny originates
 
 makes an exception to the fundamental rule that the plaintiff must show a
 
 complete
 
 chain of title to the sovereign.
 

 (Brief of Defendant/Appellant, p. 9)
 

 In opposition to the appeal, Plaintiff cites
 
 Whitley,
 
 434 So.2d at 102, for the statement, “The plaintiff in a petitory action against a defendant in possession makes out his title when he proves his ownership
 
 either
 
 by an unbroken chain of valid transfers from the sovereign or an ancestor in common with the defendant.” (Emphasis added.)
 

 Plaintiff contends the real issue on appeal is whether Plaintiff is required to prove a valid unbroken title or whether proof of a common ancestor in title suffices. In tracing the chains of title presented both by herself and by Defendant, Plaintiff points out their common ancestor in title was Stephen D. Tinney, who acquired by sale from Henry S. Lang in 1881.
 

 |RIn rebuttal Defendant argues there is no common author in title between Plaintiff and Defendant. She points out, further, that this argument was never presented to the trial court: “There is no reference to a common author or ancestor-in-title between Billiot and Langley when it comes to the Disputed Property in any written filing or any argument made by her counsel at trial.” (Reply Brief of Defendant/Appellant, p. 2) Defendant contends, therefore, this Court cannot consider the common-author-in-title argument.
 

 Issues not urged in the court below or raised by the pleadings cannot be considered on appeal.
 
 Council of the City of
 
 
 *1159
 

 New Orleans v. Washington,
 
 2009-1067 (La.05/29/09), 9 So.3d 854, 856-857.
 

 Defendant asserts, further, even if this Court were to consider the argument, Plaintiff still cannot carry her burden of proof showing a common author. Defendant admitted at trial she has no title to the Disputed Property; therefore, she cannot share a common author to that property with Plaintiff.
 
 [3]
 

 When a defendant has no title whatsoever, it is incumbent on the plaintiff to trace its title back to the sovereign.
 
 Bickham v. Graves,
 
 457 So.2d 1210, 1212 (La.App. 1 Cir.1984).
 

 Defendant argues the gap in title that is the focus of this appeal occurred from 1874 to 1881, prior to the acquisition of Stephen D. Tinney. Even if there were a common author, therefore, the gap in Langley’s chain of title destroys the entire chain such that she could not bear her burden of proof.
 

 When a defendant is in possession of the property in dispute, a showing of a common author is not enough to satisfy the burden laid out in
 
 Pure Oil v. Skinner
 
 of “title good against the world.”
 

 | flSimilarly, Defendant disputes Plaintiffs argument on appeal that La. Const. 1921, Art. XIV, § 12, “de facto confirms” Stephen D. Tinney’s 1881 acquisition of the Disputed Property. Defendant states Plaintiff apparently invoked the constitutional provision to attack the validity of the 1874 tax adjudication. Defendant points out this argument was not explored by either the parties or the court at trial. In this case, therefore, Plaintiff cannot rely on any presumption that the property was returned to the previous owner, but must affirmatively prove that the State did not dispose of, sell, or donate the property to any other person or entity prior to 1921. Plaintiff presented no evidence that the State was still in possession of the Disputed Property in 1921.
 

 Further, even if the State possessed the Disputed Property in 1921, Plaintiff has not resolved the original gap in the chain of title. If the 1874 tax adjudication to the State were null, then title would have remained vested in Laura Bielman Tinney, owner of the property prior to the adjudication. One of Plaintiffs exhibits was a Tinney Family Tree, which shows that Laura Bielman Tinney died in 1888. There is no evidence that Laura Bielman Tinney disposed of the Disputed Property prior to her death. Instead, in 1881 Henry S. Lang sold the disputed property to Stephen D. Tinney; there is no evidence to show how title passed from Laura Bielman Tinney to Henry D. Lang.
 

 Defendant further contends Plaintiffs argument that the chain of title need only be shown to be “apparently good” is flawed. Defendant asserts the cases cited by Plaintiff, in fact, allow a less-than-perfect title to be confirmed when there are minor typographical errors or an unopened succession that passed title to the next owner. Such minor errors or omissions do not threaten the integrity of the chain of title. None of the cases cited by Plaintiff involved an unexplained gap in the chain of title.
 

 [ ^Defendant concludes,
 

 Pure Oil
 
 remains good law and is still the standard for determining the burden of proof for the plaintiff in a petitory action. A chain of title which contains a
 
 *1160
 
 major gap for seven years is not “good title against the world” or even “apparently good” title. It is no title whatsoever. Since [Plaintiff] could not carry her burden of proof, [Defendant’s] Motion for Involuntary Dismissal should have been granted.
 

 We find merit to Defendant’s arguments. Plaintiff failed to carry her burden of proving her chain of title back to the sovereign. The gap from 1874 to 1881 was unexplained, and as such it interrupts tracing title back to the sovereign. Further, Plaintiffs claim it suffices to trace her title back to an ancestor-in-title in common with Defendant has no merit.
 

 For the foregoing reasons, therefore, the judgment is reversed. Judgment is rendered dismissing Plaintiffs suit at her costs.
 

 REVERSED.
 

 [1]
 

 . Defendant's parents bought land abutting the Disputed Property in the 1974. According to Defendant, her parents soon began using part of the Disputed Property as an extension of their back yard: cutting trees, mowing grass, building sheds, installing trailers, and keeping livestock on it.
 

 [2]
 

 . Defendant-appellant notes she disagrees with the trial court's findings regarding her claim of acquisitive prescription, but she does not challenge them on appeal.
 

 [3]
 

 . Defendant does have title to certain property adjacent to the Disputed Property, once supposedly owned by Stephen D. Tinney. She points out that this property is not part of the Disputed Property, however, so any previous owner of her property would not result in a common author with Plaintiff.