STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-1276


SANDRA JACKSON DAVIS

VERSUS

LEMCI, LLC, ET AL.


**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 76796
HONORABLE VINCENT JOSEPH BORNE, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Billy Howard Ezell, Judges.


REVERSED.

Peters, J., concurs in the result and assigns written reasons.

Steven J. Diebold
Champagne & Brumbaugh
P. O. Box 3764
Lafayette, LA 70502-3764
(337) 233-4414
COUNSEL FOR PLAINTIFF/APPELLEE:
    Sandra Jackson Davis

**Spencer R. Schoonenberg**
**Mayhall & Blaize, LLC**
**5800 One Perkins Pl., Suite 2B**
**Baton Rouge, LA 70808**
**(225) 810-4998**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **LEMCI, LLC**
    **Stefan Koch**
    **Kathryn Koch**

**SAUNDERS, Judge.**

This appeal arises from the trial court's finding that the initial owners of a rent house in Breaux Bridge, subsequently sold at a June 12, 2002 tax sale, were never properly served with notice of that tax sale. This finding nullified a line of conveyances stemming from that tax sale that ended with a sale to the current possessors of the rent house. Also at issue in this appeal is the trial court's finding that the initial owners of the rent house had to reimburse the possessors of the rent house for expenses the possessors incurred to restore the rent house back into a condition fit for commerce.

FACTS

This dispute over a rental property in Breaux Bridge involves the initial owners, Sandra Jackson Davis and her former husband, Melvin Davis; the tax sale purchaser, LEMCI, Inc. (LEMCI); and the possessors, Stefan and Kathryn Koch (the Kochs). Melvin purchased the home in his name only on July 12, 2001. Melvin and Sandra never paid taxes on the property. During the short period they owned the property before divorcing, Melvin was in charge of the property. Sandra visited the property no more than a handful of occasions, most recently seven years before trial. She never lived, worked on, or maintained it. She initialized these proceedings soon after the property's restoration by the current occupants was completed. Melvin was served with notice of the current proceedings by order of the trial court, but never appeared and was never subpoenaed.

The tax sale purchaser, LEMCI, acquired its claim toward the property via tax sale recorded on June 13, 2002. That entity's principal owner, Gary Massicot, testified that this property was one of about one thousand properties LEMCI acquired by tax sale over a ten-year period. On February 4, 2010, eight years later,

for the purpose of quieting title and reducing LEMCI's liability exposure, Massicot conveyed the property to a single asset entity, Zimmerman Street, LLC, for $1,500.00 before selling it to the Kochs for $26,000.00.

The Kochs were shown the property by Mr. Massicott in April 2010. The Kochs thought they and their children could renovate the house on weekends and eventually rent it out to supplement their earnings. They apparently settled on a $66,000.00 price for the property the very first time it was shown. Notwithstanding its long-abandoned condition, the Kochs took on the family project and resurrected the home.

For reasons left unanswered by the record, the Kochs did not actually purchase the property until August 2, 2010, by which time their restoration of the home was virtually complete. Three days later, on August 5, 2010, Sandra filed a petition for declaratory judgment seeking to be proclaimed owner of the property for lack of notice of the 2002 Tax Sale.

*Action of the Trial Court*

After a brief hearing, the trial court determined that Sandra and Melvin Davis had never been properly served with the 2002 Tax Notice. Therefore, it ruled in Sandra's favor with respect to ownership. However, the trial court also determined that the Kochs were due the $23,000.00 they put forth in performing the restoration, and until reimbursed that amount, the Kochs could continue to possess the property. The trial court also found that LEMCI and/or the Kochs were owed almost $3,500.00 for property taxes and interest they and their predecessors had paid for property taxes since Sandra and Melvin Davis abandoned it. The trial court's judgment was silent as to whether the Kochs were entitled to a return of the $26,000.00 purchase price they paid to LEMCI for the property, and as to who was

2

entitled to any rent collected from the property should the Kochs continue to possess the property while awaiting reimbursement from Sandra.

*Issues Presented on Appeal*

This appeal was perfected by LEMCI and the Kochs, represented by same counsel. Both maintain the following issues presented on appeal:

1.     Whether Sandra carried her burden of proving that neither she nor Melvin received constitutional notice of the pending June 12, 2002 Tax Sale.

2.     Whether ownership acquired by the Kochs through an instrument valid on its face is protected by the "Innocent Third Party Purchaser Doctrine," nothwithstanding any alleged defects in a previous instrument from which their title emanates.

3.     Whether granting a motion for involuntary dismissal is appropriate when a plaintiff who has been made a party to a lawsuit fails to answer the suit or appear at trial.

4.     Whether necessary and useful expenses include the value of the sweat equity, representing the time and labor a good faith possessor has expended improving the subject immovable property.

5.     Whether the Kochs are entitled to the enhanced value of the subject property as a result of renovations performed by them under the equitable principles of enrichment without cause.

Sandra answered the appeal. She suggests that the trial court erred in finding the Kochs had established that they had spent $23,000.00 out of pocket and in awarding LEMCI and/or the Kochs reimbursement for 2003-2012 property taxes, interest, and penalties. Finally, Sandra argues that the trial court erred by failing to award her the rental proceeds that the Kochs received since restoring the property.

*ISSUE PRESENTED ON APPEAL NUMER ONE:*

3

Both LEMCI and the Kochs contend that the trial court erred in finding that Sandra carried her burden of proving that neither she nor Melvin received constitutional notice of the pending June 12, 2002 Tax Sale. We find no merit to this contention.

A factual finding by a court regarding whether a party received sufficient notice of an impending tax sale of their property that met the due process requirements established by *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706 (1983), is subject to the manifest error clearly wrong standard of review. *Cititax Group, L.L.C. v. Gibert*, 12-633, 12-634 (La.App. 4 Cir. 12/19/12), 108 So.3d 229. As such, we will review the trial court's finding that Sandra and Melvin carried their burden of proof on this matter under this standard.

Sandra testified that she never received notice of the tax sale. Further, it is clear from the record that the April 2002 Notice was sent to United Companies Lending Corporation after the property had already been conveyed to EMC Mortgage Corporation *and then conveyed once again* to Melvin while he was married to Sandra in July 2001. Finally, when attempting to quiet title after having purchased the property at the tax sale, LEMCI served United Companies Lending Corporation with its petition for judgment declaring it to be the owner of the property.

This evidence renders the finding by the trial court that Sandra and Melvin did not receive notice of the tax sale reasonable. Therefore, we find no manifest error by the trial court in making its finding that Sandra carried her burden to prove that she never received notice of the June12, 2002 tax sale.

However, the nullity of the June 12, 2002 tax sale does not necessitate that Sandra is entitled to a judgment declaring her owner of the property. Our review of the record clearly indicates that Sandra has brought a petitiory action under

4

La.Code Civ.P. art. 3651. It states, "[t]he petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right therein, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership."

> To obtain a judgment recognizing his ownership of immovable property or real right therein, the plaintiff in a petitory action shall:
>
> (1) Prove that he has acquired ownership from a previous owner or by acquisitive prescription, if the court finds that the defendant is in possession thereof; or
>
> (2) Prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof.
>
> When the titles of the parties are traced to a common author, he is presumed to be the previous owner.

La.Code Civ.P. art. 3653.

> [T]he first issue that must be determined in a petitory action is the question of current possession. *Mt. Everett African Methodist Episcopal Church v. Carter*, 96-2591 (La.App. 1st Cir.12/29/97), 705 So.2d 1179, 1181. The defendant's possession, or lack of it, determines the burden of proof imposed on the plaintiff. *Joffrion v. Scioneaux*, 506 So.2d 512, 513-14 (La.App. 1st Cir.1986), *writ denied*, 505 So.2d 1132 (La.1987). The possession required to put the more onerous burden on the plaintiff is the same possession required to initiate the possessory action or to establish acquisitive prescription. *Griffin v. Daigle*, 99-1942 (La.App. 1st Cir.9/22/00), 769 So.2d 720, 725, *writ denied*, 00-3406 (La.2/2/01) 784 So.2d 648; see LSA-C.C.P. art. 3660. The defendant is in possession when he and his ancestors in title have had corporeal possession for at least one year or civil possession for the same period of time preceded by corporeal possession. See LSA-C.C.P. arts. 3658 and 3660; LSA-C.C. art. 3476; *Id*.

*George M. Murrell Planting & Mfg. Co. v. Dennis*, 06-1341, pp. 3-4 (La.App. 1 Cir. 9/21/07), 970 So.2d 1075, 1079.

Thus, in order to properly adjudicate Sandra's petitory action, we must determine her burden of proof. Sandra's burden is dependent upon whether the Kochs were in possession of the property. Here, it is clear from the record that

LEMCI and then the Kochs were in uninterrupted corporeal possession of the property for greater than one year prior to the trial. Thus, the burden that Sandra had to prove was the more onerous of the two under La.Code. Civ.P. art. 3653.

> In *Pure Oil Co. v. Skinner*, 294 So.2d 797 (La.1974), our supreme court held that a plaintiff not in possession versus a defendant who is in possession is required "to show good title against the world without regard to the title of the party in possession." 294 So.2d at 799. Title is made out when an unbroken chain of valid titles from the sovereign is shown. *Whitley v. Texaco, Inc.*, 434 So.2d 96, 103 (La.App. 5 Cir.1982*), writ denied*, 435 So.2d 445 (La.1983).

> "The case law is clear that 'title good against the world' means one must produce an unbroken chain of record title back or show ownership through acquisitive prescription." *Cuny v. Quinn*, 03-649, p. 5 (La.App. 5 Cir. 10/28/03), 860 So.2d 232, 237.

*Langley v. Billiot*, 09-433, p. 6 (La.App. 5 Cir. 11/24/09), 28 So.3d 1154, 1157.

Our review of the record is that Sandra failed to carry her burden of proof. Sandra's goal when she put forth the evidence in the record was to invalidate the June 12, 2002 tax sale. While that was successful, the invalidation of the tax sale served to only to establish that Sandra did not lose title. Thereafter, Sandra had the burden to produce evidence "to show good title against the world without regard to the title of the party in possession." *Id.* The record is devoid of any evidence that Sandra has shown good title against the world. Accordingly, we find that the trial court erred in rendering that Sandra was entitled to a judgment declaring her owner of the property.

*ISSUES PRESENTED ON APPEAL NUMBERS TWO THROUGH FIVE AND SANDRA'S ANSWER TO APPEAL:*

Our finding that Sandra failed to carry her burden to prove title against the world pretermits the remaining issues in this case.

*CONCLUSION:*

LEMCI and Stefan and Kathryn Koch present five issues for review.  Sandra Davis answers their appeal and requests that this court reduce the award granted to them by the trial court.

We find no merit in LEMCI and the Kochs' assertion that the trial court erred in finding that Sandra and Melvin Davis did not receive constitutionally required notice of the impending tax sale of their property, a violation of their due process rights.  However, we find that the trial court erred in granting Sandra Davis a judgment declaring her the owner of the property.  The record has no evidence that Sandra carried her burden necessary to warrant such a judgment.  Accordingly, we reverse the judgment of the trial court that Sandra is the owner of the property.  This reversal pretermits the remaining issues presented for review.  All costs of these proceedings are assessed to Sandra Davis.

REVERSED.

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

13-1276

SANDRA JACKSON DAVIS

VERSUS

LEMCI, LLC, ET AL.

**PETERS, J. concurring.**

I agree with the majority's reversal of the trial court's judgment in favor of Sandra Davis Jackson, but for different reasons than those stated by the majority. I would reverse the judgment on the basis that the trial court erred in determining that Mrs. Davis and her husband were never placed on notice of unpaid taxes. That being the case, Mrs. Davis failed in the burden of proof required to nullify the tax sale.

The exhibits of record are all joint exhibits and include the cash deed from Melvin Davis from EMC; the tax sale deed to LEMCI; the quitclaim deed from LEMCI to Zimmerman; the quitclaim deed from Zimmerman to Mr. and Mrs. Koch; the tax certificates from 2003 to 2012; the judgment of default entered by LEMCI against Melvin Davis; the 2011 and 2013 appraisals of the property; and a copy of a lease by Mr. and Mrs. Koch to a third party.

The majority appears to agree with the trial court's factual finding that neither Mr. Davis nor Mrs. Davis received the required legal tax notice, but classifies her petition for declaratory relief as a petitory action filed pursuant to La.Code Civ.P. art. 3651. That being the case, the majority concludes that because

she failed to prove title against the world, she cannot prevail in her claim of ownership of the property. While the claim for relief bears some similarity to a petitory action, I do not classify it as such. It is an action to set aside a tax deed, which I find to be an entirely different cause of action governed by other specific provisions of the law. In fact, neither litigant has couched the issues before us as a petitory action.

Mrs. Davis testified specifically on direct that she never received any notice of the taxes due and she was very careful not to mention her former husband in doing so. Equally important, she was not questioned concerning whether she received any type of correspondence from United Companies or EMC. On cross-examination, she testified that she had absolutely nothing to do with the house, that her former husband purchased the place without her knowledge, and that he handled everything relative to the house without her input. When specifically asked about the taxes on cross-examination, she responded, "[She] was assuming [Mr. Davis] was taking care of all of that." She further acknowledged on cross-examination that even after the divorce, she did not open mail addressed to Mr. Davis, and she instructed the children to give him the mail that was sent to her address. She specifically stated that had Mr. Davis received a tax notice at their former matrimonial address, she would not have known about it.

The only other evidence provided by Mrs. Davis was that of an appraiser, and this testimony had no bearing on the issue of notice. After she rested, the defendants asked for an involuntary dismissal, which the trial court denied. Thereafter, the first witness for the defendants was Gary Massicot, the owner of LEMCI. He testified concerning his company's business of purchasing tax-sale properties, but more importantly, he called the court's attention to the redemption

2

requirements of a former owner as well as the fact that the 2003 tax notice was also sent to Mr. Davis at his community address. He explained that this notice to the former owner was placed on the annual tax notice for three years after LEMCI purchased the property at the tax sale.

The assessment/collection process for property taxes is found in Chapter 5, of Title 47 of the Louisiana Revised Statutes and that process provides for a situation where title to immovable property changes hands in a particular year. While La.R.S. 47:2126 provides that while the tax roll is to be delivered to the parish tax collector on or before November 15 of the year the taxes are due, it also provides that "[t]he tax roll shall be updated as of January first or later of the year in which the taxes are collectable." Thus, a transaction involving the transfer of immovable property may not appear on the tax rolls in the name of the vendee until the next year, depending on the cutoff date an individual assessor's office applies for updating its rolls. In fact, La.R.S. 47:2153(B)(2) provides that "[f]or the purpose of tax sales, it shall be sufficient to advertise all property in the name of the tax debtor at the time the assessment was made."[1]

In this case, Mrs. Davis did not establish that the July 16, 2001 transaction was recorded before the St. Martin Parish Assessor's Office ceased updating its rolls in 2001. This becomes important because had the assessor's office closed its updating activities for the year, notice would have been proper to the record owner, United Companies. In fact, the transfer deed to Mr. Davis provides for this possibility as it provided that the vendee waived the production of tax research certification. Mrs. Davis did not establish that she and/or her former husband,

---

[1] Louisiana Revised Statutes 47:2153 has been significantly amended since 2001, but this portion of the statute remains the same.

3

rather than United Companies, were entitled to notice for 2001.

Additionally, La.R.S. 47:2153(C), as it read in 2001, addressed the situation where a sale occurred after the assessor stopped updating the parish tax rolls and provided that within a reasonable time after the tax sale, "the tax collector shall research the records of the recorder of conveyances on all property to which tax sale title was sold to tax sale purchasers for any transfers of the property that occurred after the preparation of the tax roll for the year that the property was sold for taxes." If the tax collector's office found such a transaction, it was required to give the new owner notice of the tax sale and of his or her right of redemption. La.R.S. 47:2153(C) (2001) (amended 2012). Thus, while Mrs. Davis argues that she did not receive the original notice, she is silent on this issue. The subsequent notices filed in evidence support the proposition that the tax collector's office performed its statutory duty because these notices contain a reference to the address of Mr. and Mrs. Davis. Thus, Mrs. Davis failed to prove lack of notice in this respect as well.

I would reverse on Mrs. Davis' failure to prove lack of notice, but not on the application of La.Code Civ.P. art. 3651.

4